UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 13-CR-70 (RA)

LORENZO ULLOLA ROSARIO,

Defendant. Plea

------------------------------x

New York, N.Y.
February 5, 2016
11:21 a.m.

Before:

HON. RONNIE ABRAMS,

District Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
BY: ANDREW J. DeFILIPPIS, ESQ.
Assistant United States Attorney

THE BLANCH LAW FIRM, P.C.
Attorneys for Defendant
BY: BRADLEY L. HENRY, ESQ.

ALSO PRESENT: CRISTINA WEISZ, Interpreter (Spanish)

(Case called)

MR. DeFILIPPIS: Good morning, your Honor. Andrew DeFilippis for the government.

THE COURT: Good morning.

MR. HENRY: Good morning, your Honor. Brad Henry for Mr. Ullola, who is seated to my right.

THE COURT: Good morning. Good morning to you, Mr. Ullola.

I'm sorry to get started a little bit late today. We're just running a little bit behind.

I'm going to note for the record that Mr. Ullola is being assisted by a Spanish interpreter. If at any time you're having trouble understanding any of the translations or just the substance of what I'm saying and have any questions, just feel free to raise your hand, let your attorney know, let me know, and we'll either clarify the translation or either your attorney or I will answer any questions that you have, okay?

THE DEFENDANT: Okay.

THE COURT: So I understand that you wish to plead guilty to a lesser included offense of Count One in the indictment, is that correct?

THE DEFENDANT: Yes.

THE COURT: Before deciding whether to accept your plea, I'm going to ask you certain questions so that I can be sure that you understand your rights and that you're pleading

guilty voluntarily because you are guilty and not for some other reason, so it's important that you answer my questions honestly and completely.

Ms. Cavale, please place the defendant under oath.

(Defendant sworn)

THE COURT: All right. So you are now under oath so you should know that if you answer any of my questions falsely, you may be charged with a separate crime of perjury. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. I'm going to start by asking you some questions to ensure that you're competent to plead guilty.

How old are you?

THE DEFENDANT: I'm 26.

THE COURT: How far have you gone in school?

THE DEFENDANT: I completed high school and I started university in my country.

THE COURT: Have you ever been treated or hospitalized for mental illness?

THE DEFENDANT: No.

THE COURT: Have you ever been addicted to drugs or to alcohol?

THE DEFENDANT: No.

THE COURT: In the past 24 hours have you taken any

drugs, medicine, or pills or drunk any alcoholic beverages?

THE DEFENDANT: No.

THE COURT: Is your mind clear today? Do you understand what's happening in these proceedings?

THE DEFENDANT: Yes.

THE COURT: Does either counsel have any doubt as to the defendant's competence to plead at this time?

MR. DeFILIPPIS: No, your Honor.

MR. HENRY: No, your Honor.

THE COURT: All right. So on the basis of Mr. Ullola's responses to my questions, my observations of his demeanor here in court, and representations of counsel, I find that he's fully competent to enter an informed plea of guilty at this time.

Have you had enough time and opportunity to discuss your case with your attorney, including the nature of the charges to which you intend to plead guilty, any possible defenses to the charges, and the rights that you'll be giving up by pleading guilty?

THE DEFENDANT: Yes.

THE COURT: In particular have you had enough time and opportunity to discuss the possible immigration consequences of your plea with your attorney?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorney's

representation of you?

THE DEFENDANT: Yes.

THE COURT: All right. Now what I'm going to do is I'm going to explain certain constitutional rights that you have. These are rights that you would be giving up if you entered a guilty plea.

Under the Constitution and laws of the United States, you have a right to plead not guilty to the charge in the indictment. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you did plead not guilty, you'd be entitled under the Constitution to a speedy and public trial by a jury of those charges. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In advance of trial you would have the opportunity, if you haven't had it already, to seek suppression of any or all evidence against you on the basis that it was obtained in violation of the Constitution. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial you'd be presumed to be innocent. That means that you would not have to prove that you're innocent. Instead the government would need to prove beyond a reasonable doubt that you were guilty before you could be found guilty, so even if you did nothing, you said nothing at trial,

you could not be convicted unless a jury of 12 people agreed unanimously that you're guilty. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: During trial the witnesses for the prosecution would have to come to court and testify in your presence, where you could see them and you could hear them and your lawyer could cross-examine them. If you wanted to, your lawyer could offer evidence on your behalf and you would be able to use the Court's power to compel witnesses to come to court and testify truthfully on your behalf, even if they didn't want to come. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial you would have the right to testify if you wanted to, but you'd also have the right not to testify, and if you chose not to testify, that could not be used against you in any way. No inference or suggestion of guilt could be made from the fact that you chose not to testify. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial and at every stage of your case, you'd be entitled to be represented by an attorney, and if you could not afford an attorney, one would be appointed at public expense free of cost to represent you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: As I said before, you have the right to

plead not guilty, so even right now as you sit here for purposes of entering a guilty plea, you have the right to change your mind and go to trial, but if you do plead guilty and I accept your plea, there will be no trial and you will give up the other rights that I just described. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty, I will enter a judgment of guilty and I will sentence you. I know that you're going to participate in the Young Adult Opportunity Program, but ultimately I will sentence you based on whatever submissions I get from you and your attorney and the government and a presentence report prepared by the probation department. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: There will be no appeal with respect to whether the government could use the evidence it has against you or with respect to whether you did or did not commit the crime. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In addition, if you choose to plead guilty, you have to give up your right not to incriminate yourself since today I'm going to ask you questions in court in order to satisfy myself that you are in fact guilty as charged. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now I understand that you seek to plead guilty to a lesser included offense of Count One in the indictment, which charges you with conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of heroin.

Mr. DeFilippis, could you please state the elements of the offense in question.

MR. DeFILIPPIS: Yes, your Honor.

There are two elements of a violation of Title 21 U.S. Code Section 846: first, that two or more persons entered the conspiracy specified in the indictment, which here was a conspiracy to distribute narcotics drugs; and second, that the defendant knowingly and wilfully became a member of that conspiracy.

THE COURT: If you went to trial, the government would have to prove those elements beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Now I'm going to discuss with you the maximum penalties for this crime. The maximum means the most that could possibly be imposed. It doesn't necessarily mean that that's the sentence you will receive. But you have to understand that by pleading guilty, you'll be exposing yourself to the possibility of receiving any

combination of punishments up to the maximum that I'm about to describe.

So with respect to your liberty, the maximum term of imprisonment for this crime is 20 years in prison. Do you understand that?

THE INTERPRETER: Sorry. I couldn't understand.

THE COURT: The maximum sentence that could be imposed is 20 years in prison. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The term of imprisonment may be followed by up to a term of life of supervised release, and there is a mandatory minimum term of supervised release of three years. Supervised release means that if you're sentenced to prison, after your release from prison, you will be subject to the supervision of the probation department. You will be required to obey certain rules, and if you violate those rules, you can be returned to prison without a jury trial to serve additional time even beyond your original sentence. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You should also understand that there's no parole in the federal system, so if you're sentenced to prison, you will not be released early on parole, although there is a limited opportunity to earn credit for good behavior. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In addition to these restrictions on your liberty, the maximum punishment for this crime includes certain financial penalties. The maximum allowable fine for this crime is $1 million or twice the gain you received from the crime or twice the loss to any victims, whichever is greater. I'm also required to impose a mandatory $100 special assessment. And I must order restitution to any persons or entities injured as a result of your criminal conduct, and I can order you to forfeit all property derived from the offense or used to facilitate the offense.

Do you understand that those are the maximum and minimum -- and when I say minimum, I'm referring to the three years' supervised release term -- penalties for this offense? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is the defendant now serving a state or federal sentence or being prosecuted in the state for any crime?

MR. DeFILIPPIS: Your Honor, not that I'm aware of.

MR. HENRY: No, your Honor.

THE COURT: Okay. Now you should be aware that the punishments I've just described are those that are part of the sentence, but being convicted of a felony may have other consequences, and I know we spoke about this once before, but I

do want to make sure that you understand that as a result of your guilty plea, you may be deported from the United States and deportation may be mandatory. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Have you discussed the possible immigration consequences of your plea with your attorney?

THE DEFENDANT: Yes.

THE COURT: In imposing sentence, federal judges are required to consider the recommendations of the federal Sentencing Guidelines. The guidelines are a complicated set of rules for determining an appropriate sentence. And although judges must take into account the Sentencing Guidelines when determining a sentence, in the end the judge is required to give the sentence that she believes best satisfies the purposes of the criminal law, whether it's higher or lower than the guidelines recommendation. Have you discussed the Sentencing Guidelines with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand that they're only recommendations to the Court?

THE DEFENDANT: Yes.

THE COURT: I understand that you have a written plea agreement with the government, and I have what appears to be the original plea agreement dated February 2, 2016, addressed to your attorney and signed by the assistant United States

attorney as well as the supervisor in that office. I'm going to mark this as Court Exhibit 1. I'm going to ask my deputy, Ms. Cavale, to show it to you.

Is that your signature on the last page?

THE DEFENDANT: Yes.

THE COURT: Was this document translated for you before you signed it?

THE DEFENDANT: Yes.

THE COURT: And did you discuss it with your attorney before you signed it?

THE DEFENDANT: Yes.

THE COURT: I realize that it's a long document, and it contains some technical legal language, but after reviewing it with your attorney and having it translated, do you understand all the terms of this agreement?

THE DEFENDANT: Yes.

THE COURT: All right. I'm going to just discuss some of them with you.

I see, for example, that you and the government have agreed that the appropriate guidelines sentence range, meaning the range recommended by the Sentencing Guidelines, is 87 to 108 months in prison. Do you understand that that means that neither you nor the government can argue for a different guidelines calculation, although you can seek a sentence outside of that range? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. You should also understand that this agreement does not bind me in any way. I'm required to make my own independent calculation under the Sentencing Guidelines and to impose a sentence based on what I believe is the appropriate sentence. So you should understand that my calculation may differ from the one that you and the government have agreed to. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I'm not saying that I will come up with a range that's different, but if I do, I won't allow you to withdraw your plea even if the range that I determine is higher than the one you've agreed to with the government. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Under the agreement you also admit to the forfeiture allegation, is that correct?

THE DEFENDANT: Yes.

THE COURT: Okay. Now under this agreement you are giving up your right to appeal or otherwise challenge your sentence as long as I sentence you to 108 months of imprisonment or less. So if I sentence you to more than 108 months in prison, you have the right to appeal your sentence. So if your sentence is 108 months or less, you cannot appeal it under this agreement. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that under this agreement you cannot appeal your conviction or sentence on direct appeal or otherwise by filing an action under 28 U.S.C. 2255 or 2241 on the basis of any actual or perceived immigration consequences, including deportation resulting from your guilty plea? Do you understand that? So even if you're going to be deported, you can't appeal on that basis pursuant to this agreement with the government. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Do you also understand that under this agreement you're waiving other rights of appeal, including your right to appeal your plea based on the government's failure to disclose exculpatory or other discovery material that hasn't been produced to date? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Does this written plea agreement constitute the entirety of your agreement with the government? In other words, do you understand that you have no other agreement with the government other than what's in this document?

THE DEFENDANT: Yes.

THE COURT: Did you willingly sign that agreement?

THE DEFENDANT: Yes.

THE COURT: Did anyone threaten, bribe, or force you

to sign it?

THE DEFENDANT: No.

THE COURT: Other than what's in the plea agreement has anyone offered you any inducement to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made any promise to you or prediction as to what your sentence will be?

THE DEFENDANT: No.

THE COURT: Okay. So I just want to make sure you understand that if anyone attempted to predict what your sentence will be, their prediction could be wrong, and I say that because no one -- not your attorney, not the prosecutor, not even I -- can be sure today what your sentence will be, and that won't be determined until I receive a presentence report, until I've decided on the correct calculation of the range recommended by the guidelines, and whether there is any basis not to follow that, okay? So I just want to make sure you don't have any expectations whatsoever, including based on your participation in the Young Adult Opportunity Program. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. So even if your sentence is different from what you expected or predicted, once you've pleaded guilty, you won't be allowed to withdraw your plea, all right?

THE DEFENDANT: Yes.

THE COURT: So now that you've been advised of the charges against you and the possible penalties you face, I'm going to ask you the official question:

With respect to the lesser included offense of Count One of the indictment, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Okay. In addition, do you admit or do you not admit the forfeiture allegation in the indictment?

THE DEFENDANT: I do admit.

THE COURT: Okay. So now tell me in your own words what you did that makes you believe you're guilty of this crime.

THE DEFENDANT: Between November and December 2012, I talked to a person to transport drugs to Philadelphia, and when I did that, I did it knowing it was wrong, and that happened in some areas of the Bronx.

THE COURT: Any additional questions the government would like me to ask?

MR. DeFILIPPIS: Your Honor, he said that he talked to a person about transporting drugs. If your Honor could inquire as to whether he agreed to transport or did transport drugs.

THE COURT: Did you agree to transport drugs?

THE DEFENDANT: Yes.

THE COURT: Okay. And those drugs were illegal drugs,

narcotics?

THE DEFENDANT: They were illegal, yes.

THE COURT: Okay. Was that heroin in particular?

THE DEFENDANT: I didn't see what it was, but I knew they were drugs.

THE COURT: Okay. Can you please summarize what the government's evidence would be if you were to go to trial.

MR. DeFILIPPIS: Yes, your Honor. At trial the government's evidence would consist principally of wiretap recordings of the defendant and other members of the conspiracy, it would consist of physical evidence, specifically narcotics seized from a barbershop in the Bronx, and the testimony of law enforcement witnesses who participated in those seizures and of nonlaw enforcement witnesses, including cooperating witnesses.

THE COURT: All right. Mr. Henry, do you know of any valid defense that would prevail at trial?

MR. HENRY: No, your Honor.

THE COURT: All right. So Mr. Ullola, because you acknowledge that you're in fact guilty as charged in the indictment and because I'm satisfied that you understand your rights, including your right to go to trial, that you're aware of the consequences of your plea, including the sentence which may be imposed, and because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea to the

lesser included offense of Count One in the indictment.

At some point the probation department will want to interview you in connection with the presentence report.

In light of the defendant's anticipated participation in the Young Adult Opportunity Program, do you think it makes sense to hold off on getting the presentence report?

MR. DeFILIPPIS: That's fine with the government, your Honor.

THE COURT: Okay. Mr. Henry, does that make sense?

MR. HENRY: That's fine with me.

THE COURT: I think that way the report can incorporate any participation.

And at some point prior to sentencing the government must also submit a preliminary order of forfeiture if it does intend to seek forfeiture against this defendant, okay?

When time comes for sentencing, please review my rules. They're on the court website. Among other things, defense submissions are due two weeks prior to sentencing and the government's submission one week prior to sentencing.

Does the government have any objection to continuing the current conditions of bail?

MR. DeFILIPPIS: No, your Honor. No objection.

THE COURT: All right. I do think, in light of the anticipated participation in the program, that those are extraordinary circumstances that justify Mr. Ullola staying out

on bail pursuant to the same conditions, in spite of his plea. All right? You should understand, though, that if you violate any of the conditions of your bail that you may not only be arrested for violation of bail conditions but you may be charged with a separate crime of bail jumping if, for example, you don't show up for court. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. All right. Are there any further applications?

MR. DeFILIPPIS: Not from the government, your Honor.

THE COURT: All right. Mr. Henry?

MR. HENRY: No, your Honor. I will just say for the record I received an email which I've sent to my client from Ms. Blackford. He has a special report next Tuesday at 9:30 to the probation office at 500 Pearl Street to do his first interview with his supervisor, Ms. Mejia.

THE COURT: Good. Thank you.

And you just missed the first monthly meeting, which took place on Tuesday evening, but you should remember, Mr. Ullola, that it's the first Tuesday of every month at 5:30 that we meet and have the meetings as a group and with myself and Judge Netburn.

MR. HENRY: I provided him also with an email with an attachment which has each date the program will be and directions about getting here at 5:15 in preparation for

starting at 5:30.

THE COURT: Terrific. And we're going to have to get a Spanish interpreter. He's the only Spanish speaker. Well, he's not the only Spanish speaker; he's the only exclusive Spanish speaker in the sense that he'll need a translator there to assist him, but we'll make sure that he has one.

MR. HENRY: Thank you, your Honor. He's also started English language classes as well.

THE COURT: Good. I'm glad to hear that.

All right. Well, I look forward to seeing you again, Mr. Ullola, and until then, be good, okay? Thank you.

MR. HENRY: Thank you.

MR. DeFILIPPIS: Thank you, your Honor.

THE DEFENDANT: Thank you.

o0o